IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STANLEY ELECTRIC CO., INC.,                :

                    Plaintiff,             :        Case No. 2:03-cv-435

              v.                           :        Judge Holschuh

CRAWFORD EQUIPMENT AND                     :        Magistrate Judge King
ENGINEERING CO., et al.,
                                           :
                    Defendants.
                                           :

## MEMORANDUM OPINION & ORDER

Plaintiff Stanley Electric Co., Inc. ("Plaintiff") has brought numerous state law tort and

contract claims against Defendants Crawford Equipment and Engineering Co., Crawford Industrial

Group LLC, Des Champs Laboratories, Inc., and CASPE Systems Company (collectively,

"Defendants"). Plaintiff's claims arose out of a fire that occurred at its manufacturing plant in

London, Ohio. This matter is before the Court on Plaintiff's Motion to Drop Defendants Crawford

Equipment and Engineering Company and Crawford Industrial Group, LLC as Parties (R. at 98.)

For the following reasons, Plaintiff's Motion is **DENIED**, and this case is **DISMISSED** for lack of

subject-matter jurisdiction.

**I.    Background**[1]

Plaintiff is an Ohio corporation engaged in the manufacture and spray painting of automotive

and motorcycle lighting components, such as headlights and taillights. (Compl. ¶ 1; Pl. Mem. Supp.

---

[1] The following background information is taken from Plaintiff's Complaint (R. at 1),
Crawford Industrial's and Des Champs' Motions for Summary Judgment (R. at 58, 59) and
Plaintiff's responses thereto (R. at 61, 62), and Plaintiff's Motion to Drop (R. at 99) and Des
Champs' response thereto (R. at 100).

p. 1, R. at 99.)  Spray painting these lighting components involves the use of solvents known as volatile organic compounds ("VOCs").  Prior to 1997, Plaintiff's spray paint operations did not produce a large enough quantity of VOCs to require the use of emissions control equipment, and so Plaintiff simply emitted these VOCs into the atmosphere.  (Des Champs. Mot. Summ. J. p. 2, R. at 58.)  At some time prior to 1997, however, Plaintiff decided to expand its manufacturing and spray painting operations, resulting in increased VOC production.  Consequently, government regulations forced Plaintiff to install an emissions control system to destroy the VOCs produced.  This is commonly done by means of a thermal oxidizer.  (Id.)

Plaintiff solicited bids to design this emissions control system from various companies, one of whom was Defendant CASPE Systems Co. ("CASPE").  (Dep. Brian Boldman p. 34-37, Pl. Mem. Opp'n Des Champs Mot. Summ. J. ex. A, R. at 61 ("Boldman Dep.").)  CASPE is a "systems integrator" according to Plaintiff, that is, "someone that can put an entire project together.  They don't sell you just the robot or the paint booth, they sell you the entire package."  (Boldman Dep. p. 36.)  CASPE came to Plaintiff's facility to present their proposed emissions control system in late 1996 or early 1997.  (Pl. Mem. Opp'n Des Champs Mot. Summ. J. p. 9-10, R. at 61.)  At this meeting, CASPE was primarily responsible for designing the proposed system and had selected proposed subcontractors for different parts of the system, including Defendants Crawford Equipment and Engineering ("Crawford Equipment")[2] and Des Champs Laboratories, Inc. ("Des Champs").

_____

[2] After Crawford Equipment designed and installed the thermal oxidizer at issue here, Crawford Equipment went out of business.  Plaintiff alleges that Defendant Crawford Industrial Group, LLC ("Crawford Industrial") assumed Crawford Equipment's assets and liabilities, and thus became Crawford Equipment's successor-in-interest.  (Compl. ¶ 191, R. at 1.)  Crawford Industrial disputes this allegation, and has filed a Motion for Summary Judgment on Successor Liability.  (R. at 57.)  However, Crawford Industrial has also filed a Motion for Summary Judgment on Plaintiff's Substantive Claims, and has defended against Plaintiff's claims on their

Representatives from Crawford Equipment and Des Champs were present at this proposal meeting. Des Champs was not heavily involved with CASPE's system design and did not contact Plaintiff directly during the design phase, but did work closely with Crawford Equipment.  Later, Des Champs did work directly with Plaintiff.  (Dep. Rex McClure p. 63, Pl. Mem. Opp'n Des Champs Mot. Summ. J.. ex. C, R. at 61 ("McClure Dep.").)  Crawford Equipment, in turn, received the design specifications directly from CASPE, and worked directly with Plaintiff during the design phase in selecting and designing the thermal oxidizer. (Boldman Dep. p. 41-42.) Plaintiff was "very heavily involved in the selection process" and had the opportunity to object to the use of the various subcontractors.  (Boldman Dep. p. 76, 78.)

Plaintiff eventually accepted CASPE's bid and entered into a contract with CASPE.  (Id. p. 50.) Plaintiff did not contract directly at this time with any of CASPE's subcontractors.  The system CASPE designed consisted of two automated high-speed paint lines with an attached filtration and emissions control system.  (Pl. Mem. Opp'n Des Champs Mot. Summ. J.. p. 10, R. at 61.)  Paint would be applied to a headlight in a paint booth by robotic paint sprayers.  This paint consisted of solvents, i.e. the VOCs, that kept the solid paint in a liquid state.  When sprayed, the paint would atomize.  The VOCs would be released into the air, and approximately 25 to 30% of the solid paint would be applied to the headlight.  The remaining 70 to 75% of the paint, referred to as "particulate," would be released into the air along with the VOCs.  (Boldman Dep. p. 29-30.)  A fan located in the back of the paint booth was designed to pull the VOC and particulate-laden air out of the paint booth and into ductwork.  (Id. p. 57.)  Two filters, designed specifically by CASPE, were

---

merits.  For the purposes of this Motion the Court will assume that Crawford Industrial shares Crawford Equipment's interests as to Plaintiff's substantive claims in this action.

installed to capture the particulate.  After passing through the filters, the air would then travel through ductwork to a heat exchanger designed and installed by Des Champs.  The heat exchanger preheated the VOC-laden air to prepare the VOCs for destruction.  When the air exited the heat exchanger, it traveled through more ductwork to the thermal oxidizer.  There, it was exposed to an open flame that oxidized the VOCs.  (Id.)  From there the air, now free of VOCs, would travel through more ductwork back into the heat exchanger, where it was cooled and then vented into the atmosphere.

Representatives from both Crawford Equipment and Des Champs came to Plaintiff's facility to install the thermal oxidizer and heat exchanger, and to provide training for Plaintiff's employees. (Pl. Mem. Opp'n Crawford Mot. Summ. J. p. 5-6, R. at 62; Boldman Dep. p. 175-76.)  Soon after the system was installed, Plaintiff detected problems with its performance.  Solid paint particulate from the spray painting booths passed through the filters at an unacceptable level and started to accumulate on the Des Champs heat exchanger.  Plaintiff attempted to remedy this situation by modifying and eventually replacing the filters used in the system, and by purchasing a different type of heat exchanger to replace the Des Champs heat exchanger.  The new heat exchanger was not designed to Plaintiff's specifications, however, and Plaintiff soon contracted directly with Des Champs for a replacement heat exchanger identical to the first.  (Pl. Mem. Supp. Mot. Drop p. 2-3, R. at 99.)  Plaintiff continued to attempt to address the particulate accumulation problem through maintenance and cleaning, but the particulate continued to accumulate.

On July 24, 2002, a power failure at Plaintiff's facility shut down the emissions control unit. (Pl. Mem. Opp'n Des. Champs Mot. Summ. J. p. 26, R. at 61.)  After power was restored, Plaintiff repeatedly attempted to restart the thermal oxidizer.  (Des Champs. Mot. Summ. J. p. 10, R. at 58.)

4

On the final attempt, the heat exchanger caught fire.  (Boldman Dep. p. 101.)  Both the heat exchanger and the thermal oxidizer were destroyed by the fire.  (Id. p. 286.)  Plaintiff alleges that excess particulate in the heat exchanger ignited, causing the fire.  (Pl. Mem. Opp'n Des Champs Mot. Summ. J. p. 4, R. at 61.)

Plaintiff filed its Complaint in this matter on May 14, 2003.  (R. at 1.)  Plaintiff brought tort law claims against all Defendants for strict liability design defect; strict liability failure to warn; negligent failure to warn; and breach of implied warranty.  Additionally, Plaintiff brought contract law claims against all Defendants for breach of contract; breach of implied warranty of fitness for a particular purpose; and breach of implied warranty of merchantability.  Plaintiff's contract law claims against Crawford Equipment and Des Champs were based on allegations that Crawford Equipment and Des Champs were in privity of contract with Plaintiff.  Plaintiff then filed its First Amended Complaint on January 16, 2004, which added a claim for negligence against all Defendants and added numerous CASPE entities and officers as Defendants.[3]  Crawford Industrial and Des Champs filed Motions for Summary Judgment on January 1, 2006.  (R. at 57, 58, 59.)

While those Motions were pending, the Court issued an Order to Show Cause that *sua sponte* raised the question of this Court's subject-matter jurisdiction.  (October 26, 2007, R. at 97.)  Specifically, the Court noted that, contrary to Plaintiff and Defendants' earlier representations, it appeared that Crawford Industrial is an Ohio citizen for the purposes of diversity jurisdiction.  (Id. at p. 3.)  Because Plaintiff is also an Ohio citizen, it appeared to the Court that complete diversity between the parties might not exist, which would divest this Court of its subject-matter jurisdiction.

---

[3] These CASPE entities and officers were dismissed by stipulation of the parties on February 16, 2005 (Order, R. at 42.)  CASPE, however, remains a party.

5

(Id.)  The Court ordered Plaintiff to submit a memorandum of law showing why the case should not be dismissed for lack of subject-matter jurisdiction.  (Id.)

Plaintiff submitted its Motion to Drop and an accompanying Memorandum in Support on November 12, 2007 in response to this Court's Order to Show Cause, asking this Court to drop Crawford Equipment and Crawford Industrial under Rule 21 to preserve the Court's subject-matter jurisdiction.  (R. at 98, 99.)  Des Champs submitted a Response on November 27, 2007 (R. at 100), to which Plaintiff submitted a Reply and Memorandum in Reply on December 7, 2007.  (R. at 101, 102.)  Crawford Equipment, Crawford Industrial, and CASPE have not submitted responses to Plaintiff's Motion to Drop.  This issue is now ripe for adjudication.

## II.  Standard Governing Motions to Drop a Party

"All challenges to subject-matter jurisdiction premised upon diversity of citizenship [are measured] against the state of facts that existed at the time of filing" the complaint.  Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004); see also Mollan v . Torrance, 22 U.S. 537, 539 (1824).  To invoke a court's subject-matter jurisdiction on the basis of diversity of citizenship, the amount in controversy must exceed $75,000 exclusive of interest and costs, and the action must be between citizens of different states.  28 U.S.C. § 1332(a)(1).  Federal courts have always required "complete diversity" of citizenship in diversity cases.  Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806).

A limited exception to this time of filing rule exists, however.  "[I]t is well settled that Rule 21 [of the Federal Rules of Civil Procedure] invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time."  Newman-Green Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989).  That Rule, in pertinent part, states that "[o]n motion or on its own, the

court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21. To determine whether a nondiverse party is dispensable, courts refer to the analysis set forth in Rule 19 governing required joinder of parties.

Much confusion and inaccurate terminology has surrounded the application of the principles set forth in Rule 19. See, e.g., Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 116 n. 12 (1968); FED. R. CIV. P. 19 Advisory Committee Notes to the 1966 and 2007 Amendments. The recent restyling of the Federal Rules of Civil Procedure in December 2007, however, helps to clarify the Rule 19 analysis. Rule 19, in pertinent part, reads:

**(a)     Persons Required to Be Joined if Feasible**

> (1)     Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> (A)     in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> (B)     that person claims an interest relating to the subject of the action, and is so situated that disposing of the action in the person's absence may:
>>
>>> (i)     as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> (ii)     leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

* * *

**(b)     When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

> (1)     the extent to which a judgment rendered in the person's absence

7

> might prejudice that person or the existing parties;
>
> (2)    the extent to which any prejudice could be lessened or avoided by:
>
> > (A)    protective provisions in the judgment;
> >
> > (B)    shaping the relief; or
> >
> > (C)    other measures;
>
> (3)    whether a judgment rendered in the person's absence would be adequate; and
>
> (4)    whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19.

Rule 19 embodies a sequence of pragmatic questions that a court must answer on the facts of the case before it to determine if, in the end, in "equity and good conscience" the case can proceed without a required party. See, e.g., Temple v. Synthes Corp., 498 U.S. 5, 8 (1990) (Rule 19 analysis is a sequence of discrete questions); Provident Tradesmens, 390 U.S. at 116 n. 12 (stressing the pragmatic aspect of the Rule 19 analysis). When conducting the Rule 19 analysis, however, courts and litigants have frequently been guilty of "engag[ing] in thoughtless labeling based on legal relationship rather than on ad hoc analysis of relevant factors and the underlying policies." 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 19.02[2][c] at 19-12, 19-13 (3d ed. 2007).

This "labeling" involved identifying parties as "necessary" and "indispensable" based entirely on their legal relationship to one another and not on the specific factual circumstances of the case. Id. Rigid categorization and application of inflexible rules are not parts of the Rule 19 analysis. In fact, revised Rule 19 does not even use the terms "necessary" and "indispensable." Rule 19(a) speaks in terms of "persons required to be joined," not "necessary parties." A "person

required to be joined" is one who has "an interest in the controversy, and who ought to be made [a party], in order that the court may act." Shields v. Barrow, 58 U.S. (17 How.) 130, 139 (1855)[4]; see also MOORE'S § 19.02[2][c] at 19-11. Calling a party an "indispensable" one, a term eliminated from Rule 19 by the 2007 Amendments, was a conclusion that could only be reached after conducting the entire Rule 19 inquiry, including Rule 19(b). FED. R. CIV. P. 19 Advisory Committee Note to 2007 Amendments (noting that the term was used only to express a conclusion reached after applying Rule 19(b), and that it has been "discarded as redundant"). A court declared a party to be "indispensable" only if, after conducting the Rule 19 inquiry, the court determined that the party "not only [has] an interest in the controversy, but [has] an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." Shields, 58 U.S. at 139.

The Rule 19 analysis is a three step inquiry. Glancy v. Taubman Centers, Inc., 373 F.3d 656, 666 (6th Cir. 2004). First, a court must determine if a party is required to be joined pursuant to Rule 19(a). Id. A party is required to be joined if their absence threatens 1) a lack of complete relief; 2) to impede or impair the ability of an interested person to protect that interest; or 3) to subject an existing party to the case to inconsistent or varying obligations because of the absent party's interest. Because this case is based on diversity jurisdiction, state law defines what interest a party may have

---

[4] Shields was decided prior to the enactment of the Federal Rules of Civil Procedure. However, Shields' definitions of "required" and "indispensable" parties are considered classic definitions that are still viable under the Rules, and are still quoted by federal courts. See, e.g., Z & B Enterprises, Inc. v. Tastee-Freez Intern, Inc., 162 F. App'x 16, 19 (1st Cir. 2006) (citing Shields for these definitions); Frazier v. City of Norfolk, 236 F.R.D. 273, 275 (E.D. Va. 2006) (same); MOORE'S § 19.02[2][c] at 19-10 ("Although [Shields'] formulations obviously predate the Rules, there is no question that they accurately reflect the practice to this day").

in the subject of an action.  Although federal law controls the ultimate question of whether a party is required to be joined, "in diversity suits, state law clearly determines the nature of an individual's interest in a particular controversy or in the subject matter of a dispute."  7 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1603 (3d ed. 2001); see also Provident Tradesmens, 390 U.S. at 125 n. 22 ("[S]tate law questions may arise in determining what interests the [absent party] actually has").

Second, if the court finds that the party is required to be joined, the court must then determine whether joining that party would destroy the court's subject-matter jurisdiction, i.e. whether joinder is feasible.  Glancy, 373 F.3d at 666.  Third, if joinder is not feasible, the court must then consider the Rule 19(b) factors to determine if, "in equity and good conscience," the action can continue or should be dismissed.  Id.  A court engages in the Rule 19(b) analysis only after it has determined that the party is required to be joined under Rule 19(a).  Temple, 498 U.S. at 8.  No one factor is dispositive, and a court must look at the factors together to determine if the action can continue or should be dismissed.  Like the entire Rule 19 analysis, this inquiry is flexible and pragmatic.  MOORE'S § 19.05[1][b] at 19-84.

## III.   Analysis

Although the Rule 19 analysis does not usually lend itself to labeling and conclusory statements, the Supreme Court has held that, as a matter of law, joint tortfeasors are not parties required to be joined, much less indispensable parties.  Temple, 498 U.S. at 7.  It is thus clear that, as to Plaintiff's tort law claims, Crawford Equipment and Crawford Industrial may be dropped from this case.  The question of whether Rule 19 requires Crawford Equipment's and Crawford Industrial's presence as to Plaintiff's contract law claims, however, is not as straightforward.

A. "Labeling" and Crawford Equipment's and Crawford Industrial's Interests

Both Plaintiff and Des Champs are guilty of engaging in inappropriate "labeling" with regard to the arguments concerning Plaintiff's contract law claims. Des Champs argues for a general rule that a party to a contract (in this case, Crawford Equipment) is always indispensable, merely by virtue of having signed that contract. (Def. Resp. p. 5-8, R. at 100.) Des Champs is simply incorrect. Unlike joint tortfeasors in tort law, neither the Supreme Court nor any other court has broadly pronounced that a signatory to a contract is indispensable for that reason alone. Des Champs' argument is precisely the type of "thoughtless labeling" based on bare legal relationships that should not be a part of the Rule 19 analysis.

Plaintiff also engages in labeling, but in a different way. Plaintiff argues that it is an intended third party beneficiary of the contracts between CASPE and Crawford Equipment, and between Crawford Equipment and Des Champs. (Pl. Mot. Drop p. 8, R. at 98.) Plaintiff further argues that Defendants entered into the contracts with the mutual interest of conferring a benefit on Plaintiff (namely creating an effective emissions control system), and thus that these contracts impose joint and several liability on Defendants. (Pl. Reply p. 11-12, R. at 102.) Plaintiff attempts to analogize the relationship between Defendants to the relationship of joint tortfeasors. The problems associated with attempting to label Plaintiff as an intended third party beneficiary, and Defendants as joint and several obligors, however, are apparent when examining the record in this case.

As noted above, the Court must look to Ohio law to determine Crawford Equipment's and Crawford Industrial's interests in the subject of this action. Under Ohio law,

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

> (a)    the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b)    the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promises performance.

(2)    An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Hill v. Sonitrol of Southwestern Ohio, 36 Ohio St. 3d 36, 40, 521 N.E.2d 780 (1988) (quoting

RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981)).  To determine whether a third party is an

intended or incidental beneficiary, the Ohio Supreme Court has adopted an "intent to benefit" test

which states that

> There must be evidence, on the part of the promisee, that he intended to directly benefit a third party, and not simply that some incidental benefit was conferred on an unrelated party by the promisee's actions under the contract. There must be evidence that the promisee assumed a duty to the third party.

TRINOVA Corp. v. Pilkington Bros. P.L.C., 70 Ohio St. 3d 271, 278, 638 N.E.2d 572 (1994).  This

inquiry is necessarily dependent on the language of the contract at issue.  See, e.g., Lin v. Gatehouse

Constr. Co., 84 Ohio App. 3d 96, 100 (8th Dist. 1992) ("Those cases which have construed whether

a contract was made for the direct or incidental benefit of a third party have looked necessarily to

the language of the contract").

    Plaintiff asserts that it is an intended third party beneficiary of these contracts (Pl. Mem.

Supp. p. 8, R. at 99), and elsewhere in the record states that it "has presented factual evidence which

supports a finding that it was a third party beneficiary of the original contract between Crawford

[Equipment] and Des Champs."  (Pl. Mem. Opp'n Des Champs Mot. Summ. J. p. 55, R. at 61.)  This

factual evidence, however, does not include the language of all the contracts at issue.  Plaintiff has

submitted a copy of the contract between CASPE and Crawford  Equipment, (id.. ex. B), but not a

copy of the contract between Crawford Equipment and Des Champs.

Plaintiff attempts to show, through evidence other than the contract language, that Crawford Equipment and Des Champs intended to benefit Plaintiff by pointing to the facts that Crawford Equipment and Des Champs were present at the CASPE proposal meeting with Plaintiff, and that Crawford Equipment and Des Champs knew they were designing components for use in the CASPE emissions control system.  (Pl. Mem. Opp'n Des Champs Mot. Summ. J. p. 56, R. at 61; Pl. Mem. Opp'n Crawford Industrial Mot. Summ. J. Sub. Cl. p. 2-7, R. at 62.)  This Court, however, simply cannot determine whether the contract between Crawford Equipment and Des Champs created intended third party beneficiary rights in Plaintiff without construing, at the barest minimum, the language of the contract.  Ohio law states that the intended third party beneficiary analysis depends on the language of the contract at issue.  See Gatehouse Constr. Co., 84 Ohio App. 3d at 100. Plaintiff cannot realistically claim that it is an intended third party beneficiary under contract language that the Court cannot construe absent the contract language itself.  And while the Court does have before it a copy of the contract between CASPE and Crawford Equipment, questions of law and fact exist as to whether that contract actually creates intended third party beneficiary rights in Plaintiff.

The same is true for the question of what type of liability these contracts impose.  Under Ohio law, this question depends on the language of the contract.  Spicer v. James, 21 Ohio App. 3d 222, 223 (2d Dist. 1985) (specific language in a contract can overcome presumption of joint and several liability among cosigners of one contract); 18 OH. JUR. 3D Contracts § 142 (2001) ("Whether contract rights or duties are joint, several, or joint and several depends upon the language of the contract").  As noted, Plaintiff has not submitted copies of all the contracts at issue, and in the absence of the language of the contract between Des Champs and Crawford Equipment, the Court

13

cannot determine what type of liabilities that contract imposes with respect to any alleged third party beneficiaries to that contract.

Plaintiff argues that there is a presumption in favor of joint and several liability among co-obligors in Ohio law. (Pl. Reply p. 9, R. at 102.) There is indeed such a presumption under Ohio law, see Spicer, 21 Ohio App. 2d at 223, but it only applies when multiple obligors sign the same contract, not where multiple parties sign different contracts, as in this action. Plaintiff relies on First National Bank of Akron v. Cann, 503 F. Supp. 419 (N.D. Ohio 1980) for the proposition that multiple signors of multiple contracts can be jointly and severally liable. This case, however, does not help Plaintiff. First National Bank had entered into separate contracts with B.E.C., a construction company, and Cann, an architect and employee of B.E.C., to remodel the Bank's offices. When the construction turned out to be faulty, First National Bank sued both B.E.C. and Cann for, among other claims, breach of contract. The court found that, despite the separate contracts, B.E.C. and Cann were jointly and severally liable to First National Bank. Id. at 435. In making this determination, the court acknowledged that its "interpretation [was] based solely upon the face of the contract documents." Id. at 434 n. 16. The court also took into account B.E.C. and Cann's "mutual interest" in the remodeling project. Id. at 435. These facts clearly distinguish First National Bank from the instant case. Unlike in First National Bank, the Court does not have the contract between Crawford Equipment and Des Champs to construe. To the extent, if any, that joint and several liability may be proven by an examination of the scope of the different signors' "mutual interest," this obviously presents a question of law and fact that cannot be determined in a conclusory manner that would warrant dropping one of the parties to the contract in question.

Plaintiff's attempts to simply declare itself an intended third party beneficiary of the

Defendants' contracts, and to identify Defendants as joint and several obligors, in essence amount to the type of cursory labeling that is not a part of the Rule 19 analysis.  Rather then showing that Crawford Equipment and Crawford Industrial can be dropped, Plaintiff's arguments help to point out the interests that Crawford Equipment and Crawford Industrial have in the subject of this action for the purposes of the Rule 19 analysis.  Crawford Equipment has an interest in litigating the construction and interpretation of the contracts it signed with CASPE and Des Champs; specifically, 1) whether the contract between CASPE and Crawford Equipment either expressed an intent to benefit Plaintiff and created third party beneficiary rights in Plaintiff, or created joint and several liability between Defendants; and 2) whether Plaintiff can establish either intended third party beneficiary status or joint and several liability without presenting the language of the contract between Crawford Equipment and Des Champs.

Crawford Industrial, as Crawford Equipment's purported successor-in-interest, shares these interests with Crawford Equipment.  Although Crawford Industrial disputes the question of whether it is Crawford Equipment's successor-in-interest (Mot. Summ. J. Successor Liability, R. at 57), Crawford Industrial has also filed a Motion for Summary Judgment on Plaintiff's Substantive Claims that defends against Plaintiff's contract law claims on the merits.  Crawford Industrial has thus taken the position that, to protect its own interests, it must protect Crawford Equipment's interests under the contracts at issue.  Crawford Industrial and Crawford Equipment share the same interests in the interpretation of these contracts.

### B.    Are Crawford Equipment and Crawford Industrial Required to be Joined?

Having defined Crawford Equipment's and Crawford Industrial's interests in the subject of this action, the Court proceeds to determine if those interests require them to be joined.  The Court

finds that Crawford Equipment and Crawford Industrial are required to be joined because adjudicating this case in their absence might "as a practical matter impair or impede [their] ability to protect [their] interest." FED. R. CIV. P. 19(a)(1)(B)(i).

Crawford Equipment and Crawford Industrial have an interest in the determination of whether Crawford Equipment's contracts with CASPE and Des Champs created intended third party beneficiary rights in Plaintiff. As a signatory to these contracts, however, Crawford Equipment clearly has an interest in how they are construed. In the absence of the Crawford Equipment-Des Champs contract, Crawford Equipment has an interest in arguing that Plaintiff cannot establish intended third party beneficiary status. Even though Plaintiff has submitted the CASPE-Crawford Equipment contract, Crawford Equipment still has an interest in arguing that this contract should not be construed as creating intended third party beneficiary rights in Plaintiff. Crawford Equipment also has an interest in litigating the question of whether the contracts at issue created joint and several liability between Defendants. Crawford Industrial, as noted, shares Crawford Equipment's interests. Dropping Crawford Equipment and Crawford Industrial from this case, and then litigating third party beneficiary issues, could impair or impede their ability to protect these interests. Rule 19(a)(1)(B)(i) requires joining Crawford Equipment and Crawford Industrial.

### C. Is Joining Crawford Equipment and Crawford Industrial Feasible?

As this Court explained in its Order to Show Cause (October 26, 2007, R. at 97), it is not feasible to join Crawford Industrial. Because Crawford Industrial is an unincorporated organization, its citizenship is determined by reference to the citizenship of all its members. Carden v. Arkoma Associates, 494 U.S. 185, 195-96 (1990). One of Crawford Industrial's members is an Ohio citizen, and thus Crawford Industrial is an Ohio citizen. (Order to Show Cause p. 2-3, October 26, 2007,

16

R. at 97.) Because Plaintiff is an Ohio citizen as well, complete diversity would not exist if Crawford Industrial remains a party to this action. This would destroy the Court's subject-matter jurisdiction, see 28 U.S.C. § 1332(a)(1); Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806), and it is not feasible to join Crawford Industrial, an Ohio citizen.

It is feasible, however, to join Crawford Equipment. This Court's Order to Show Cause did not identify anything as to Crawford Equipment's citizenship that would disturb complete diversity. Because Crawford Equipment is required to be joined by Rule 19(a) and it is feasible to join Crawford Equipment, Crawford Equipment must remain a party to this case. It is unnecessary to proceed with the Rule 19(b) analysis as to Crawford Equipment. The question of what to do with Crawford Industrial, however, requires further analysis.

### D. In Equity and Good Conscience, can This Action Proceed Without Crawford Industrial?

The Court must now determine, by reference to the four factors enumerated in Rule 19(b), whether in equity and good conscience this action can proceed without Crawford Industrial, or whether it should be dismissed. "There is no other option, and each choice poses risks. If the [C]ourt proceeds, it invites the very harm that justified finding the absentee necessary in the first place . . . If the [C]ourt dismisses, it robs the plaintiff of its forum of choice, delaying or possibly denying vindication of plaintiff's rights." MOORE'S § 19.05[1][a] at 19-80, 19-81. This analysis is governed "by the practicalities of the individual case." Keweenaw Bay Indian Community v. State, 11 F.3d 1341, 1346 (6th Cir. 1993). Despite the impact on Plaintiff, who chose to bring this action in federal court, not state court, the Court finds that it cannot proceed with this action in Crawford Industrial's absence.

The Court must first evaluate the extent to which a judgment rendered in Crawford

17

Industrial's absence might prejudice Crawford Industrial's interests. FED. R. CIV. P. 19(b)(1). While this factor appears to encompass the same analysis as was conducted under Rule 19(a), the difference is one of degrees. While the Rule 19(a) analysis focuses on a basic possibility of harm, Rule 19(b)(1) is concerned with whether that harm will actually occur. MOORE'S § 19.05[2][a] at 19-90. The Court finds that, in this case, the threatened harm will almost certainly occur. Plaintiff's entire theory of liability on its contract law claims, at least as to Crawford Equipment, Crawford Industrial, and Des Champs, hinges on its theory that Defendants' contracts created intended third party beneficiary rights in Plaintiff, and that the contracts created joint and several liability. Plaintiff represents that it will concede or waive its contract law claims against Crawford Equipment and Crawford Industrial. (Pl. Mot. Drop p. 10, R. at 99.) Plaintiff, however, does still intend to attempt to enforce the Crawford Equipment-Des Champs contract against Des Champs. If Plaintiff were willing to concede its claims under this contract against Des Champs as well, perhaps Crawford Industrial's interests would not be implicated. As the case stands, however, Plaintiff still intends to argue that Des Champs is liable to Plaintiff, as an intended third party beneficiary, under the Crawford Equipment-Des Champs contract, which was not presented to the Court. Plaintiff will still have to put forth its theory that Crawford Equipment and Des Champs intended to benefit Plaintiff under this contract, and that the contract created joint and several liability to Plaintiff, in order to recover against Des Champs.

True, Plaintiff did sign a separate contract with Des Champs for a replacement heat exchanger (Pl. Reply p. 19-21, R. at 102), but Plaintiff has never attempted to sue Des Champs for breach of this contract. Plaintiff's position has always been that this second contract was not a separate contract at all, but rather a second tender under the original contract. (Pl Mem. Opp'n Des

Champs Mot. Summ. J. p. 58, R. at 61.)  Even in Plaintiff's Reply in support of its Motion to Drop, the last opportunity Plaintiff had to present arguments to the Court, Plaintiff says that "if such a separate contract exists, [Plaintiff] may have a claim for breach of contract against Des Champs." (p. 19, R. at 102.)  To recover against Des Champs, Plaintiff will necessarily have to argue that the Crawford Equipment-Des Champs contract created intended third party beneficiary rights in Plaintiff, or that the contracts created joint and several liability.

However, this would greatly prejudice Crawford Industrial.  While Crawford Equipment remains a party to this case and could theoretically defend its interests, Crawford Equipment has never even appeared in this case, let alone taken a part in litigating it.  Crawford Industrial is the party that has litigated Crawford Equipment's interests, because Crawford Industrial shares Crawford Equipment's interests and, if successor liability is proved, may be held liable on contracts that Crawford Equipment signed.  Crawford Industrial has taken the position that to protect its interests it must defend Crawford Equipment's interests against Plaintiff's substantive claims, and has thus claimed an interest in determining the effect of contracts that Crawford Equipment signed. This interest will necessarily be impaired if this action were to go forward in Crawford Industrial's absence.

If this action were to go forward, the Court will necessarily have to decide these contract issues with respect to Plaintiff's claims against Des Champs, because Plaintiff's entire theory of contract liability hinges on the interpretation of Defendant's contracts.  To determine whether Plaintiff can recover against Des Champs as an intended third party beneficiary of the Crawford Equipment-Des Champs contract, this issue will necessarily have to be decided, thus directly implicating Crawford Industrial's interests.  Deciding these issues in Crawford Industrial's absence

19

will completely deny Crawford Industrial the opportunity to protect its claimed interests, inevitably resulting in prejudice to Crawford Industrial.

Turning to the second factor, this risk of prejudice cannot be sufficiently mitigated by protective provisions in the judgment or other measures. FED. R. CIV. P. 19(b)(2). The Court cannot shape the relief or judgment to lessen the prejudice to Crawford Industrial, because the relief sought is not what will prejudice Crawford Industrial. The risk of harm to Crawford Industrial is the risk presented in litigating Crawford Equipment's, and thus Crawford Industrial's, claimed obligations under Crawford Equipment's contract with Des Champs without Crawford Industrial being present. The Court, if it proceeded with this action, would necessarily have to rule on this issue in its entirety to dispose of the action, and could not limit its judgment so as to lessen the prejudice to Crawford Industrial. While Crawford Equipment could remain a party to the case, this is insufficient to mitigate the prejudice to Crawford Industrial. Crawford Equipment has not participated in this case in any meaningful way, and holding that Crawford Equipment could adequately protect Crawford Industrial's interests would be futile. Crawford Industrial could also intervene under Rule 24, but Plaintiff would not be able to assert any claims against Crawford Industrial because the Court's supplemental jurisdiction does not extend to claims by a plaintiff against a nondiverse defendant. See 18 U.S.C. § 1367(b). Crawford Industrial would be relegated to observing and offering its opinion on issues, rather than actually litigating them. This is insufficient to lessen the risk of prejudice to Crawford Industrial.

The third factor asks whether a judgment rendered in Crawford Industrial's absence would be adequate for Plaintiff. FED. R. CIV. P. 19(b)(3). This factor supports Plaintiff's Motion, but not conclusively so. If, hypothetically, after dropping Crawford Industrial Plaintiff presented the

relevant contract language and the Court were to find that the contracts at issue did indeed create intended third party beneficiary rights in Plaintiff and imposed joint and several liability on Defendants, Plaintiff could theoretically recover the entire judgment from either CASPE, Crawford Equipment, or Des Champs. This would provide Plaintiff with an adequate remedy. If the Court decided these issues against Plaintiff, then presumably only CASPE would be potentially liable on the contract it signed with Plaintiff. Because CASPE will still be a party to this suit if Crawford Industrial is dropped, Plaintiff could theoretically recover the entire judgment from CASPE.

The weight of this conclusion is undercut, however, by the fourth factor in the Rule 19(b) analysis, which asks whether Plaintiff would have an adequate remedy if the action is dismissed. FED. R. CIV. P. 19(b)(4). Ohio Revised Code § 2305.19(A) provides that if a plaintiff's claim "fails otherwise than upon the merits, the plaintiff . . . may commence a new action within one year after the date of the . . . failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later." The Ohio Supreme Court, in Wasyk v. Trent, 174 Ohio St. 525, 191 N.E.2d 58 (1963) (syllabus), held that when a federal diversity action is dismissed for lack of subject matter jurisdiction, R.C. § 2305.19(A) permits the plaintiff to bring a new action in state court. This section would clearly be applicable to Plaintiff's claims here. Plaintiff can file a new action in Ohio court with Crawford Industrial as a party, and this case can be fully litigated with all parties present. This would be a superior and more efficient means of settling this dispute than proceeding in Crawford Industrial's absence.

Evaluating all the Rule 19(b) factors together, the Court determines that, in equity and good conscience, this action cannot proceed without Crawford Industrial. To do so would invite actual and serious prejudice to Crawford Industrial's interests that could not be sufficiently mitigated.

21

Furthermore, an alternate forum is available to Plaintiff in which this dispute can be resolved. With the first, second, and fourth factors weighing so heavily towards a conclusion that the action cannot proceed without Crawford Industrial, the Court cannot say that the third factor, standing alone, would justify dropping Crawford Industrial. After conducting the Rule 19(a) and (b) analysis, the Court concludes that Crawford Industrial is an indispensable party who cannot be dropped from this action.

## IV.    Conclusion

Crawford Equipment is a party required to be joined, and it is feasible to join Crawford Equipment. Thus, Plaintiff' Motion to Drop is **DENIED** as to Crawford Equipment. Furthermore, the Court determines that this action cannot in equity and good conscience go forward without Crawford Industrial, a required party whose joinder is not feasible. Plaintiff's Motion to Drop is **DENIED** as to Crawford Industrial as well. (R. at 98.) Because both Plaintiff and Crawford Industrial are Ohio citizens for diversity jurisdiction purposes, complete diversity does not exist in this case, and this Court has no subject-matter jurisdiction in this case. Therefore, this action is **DISMISSED**.

**IT IS SO ORDERED.**

Date: February 27, 2008                              **/s/ John D. Holschuh**
                                                     John D. Holschuh, Judge
                                                     United States District Court